UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

XIOMARA L. ORELLANA,

                             Plaintiff,                  **REPORT AND RECOMMENDATION**

     v.                                                    20-cv-06050 (JMA) (ST)

FARMINGDALE SCHOOL DISTRICT,

                              Defendant.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On December 11, 2020, Plaintiff Xiomara L. Orellana ("Plaintiff") commenced this action against Defendant Farmingdale School District ("District") alleging claims for discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"). The District moved to dismiss the Complaint for Plaintiff's failure to state any cause of action.

The Honorable Joan M. Azrack referred Defendant's Motion to Dismiss to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, this Court respectfully recommends that Defendant's Motion to Dismiss be granted.

**I.     BACKGROUND**

    **A.  Factual Background**

On September 1, 2000, Plaintiff commenced her employment as a Spanish Teacher at the District's High school. Compl. at 3. Plaintiff is an individual female with underlying diabetic conditions. *Id*. at 2.

During the course of her employment, Plaintiff requested that the District and her supervisor Stanley Pelech, the Director of World Languages ("Director Pelech"), make several

1

accommodations on the grounds of her disability. *Id*. at 3. Plaintiff claims she is disabled because her diabetes limits her from one or more of her major life activities, including but not limited to, working. *Id.* at 2.

In May 2014, Plaintiff first made certain accommodation requests, which were initially denied by Director Pelech and the District. *Id*. at 3; *See* Def.'s Mot., DHR Order at 1, Ex. C. Plaintiff allegedly retained an attorney, and after negotiations, Plaintiff's requests were granted. *Id*.

In August 2018, Plaintiff requested an additional accommodation that an air conditioner be installed in her classroom, as the heat in the summer months allegedly exacerbated Plaintiff's symptoms related to her diabetes. Compl. at 3. Plaintiff submitted two supporting letters from her endocrinologist and claims that her request was denied by the District. *Id*. at 4. Upon the District's denial of her request, on December 17, 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination. *Id*. In April 2019, the District agreed to provide Plaintiff with an air conditioner, and she withdrew her EEOC charge. *Id*. Plaintiff alleges that the District accepted her request upon the condition that she withdrew her complaint from the EEOC. *Id*.

In May 2019, Plaintiff requested that she be assigned higher level Spanish courses, specifically Level 3 and Level 4 courses, for the 2019/2020 school year. *Id*. Plaintiff emailed Director Pelech and explained that the lower-level courses generally had a larger enrollment of students, as well as more students with behavioral issues, and that the added stress of those courses/students exacerbated her diabetes symptoms. *Id*. Further, Plaintiff was an advisor on the Spanish Honor Society for the past two years at that time and wanted to teach the Level 3 and Level 4 students that were part of the Honor Society. *Id*. Plaintiff alleges that her similarly

2

situated non-disabled coworkers routinely had their scheduling requests granted without issue. *Id*.

Director Pelech did not respond to Plaintiff's email. *Id*. On May 31, 2019, Plaintiff received her course assignment for the 2019/2020 school year. *Id*. at 5. The District had denied Plaintiff's request. *Id*. Plaintiff was assigned to four Level 2 classes and one Level 3 class. *Id*. Plaintiff subsequently learned that there were six sections of Level 4 classes for the 2019/2020 school year, as opposed to only four sections for the previous years. *Id*. Plaintiff alleges that the District could have assigned Plaintiff to a Level 4 class without burdening and/or inconveniencing any other Spanish teachers in the department, as two additional Level 4 courses were added that year. *Id*. Plaintiff also alleges that prior to her EEOC charges, and prior to Director Pelech becoming her direct supervisor in 2014, Plaintiff had been assigned Level 4 classes. *Id*.

Plaintiff then complained to the Assistant Superintendent, Glen Zakian, and requested that an investigation be conducted as she believed that Director Pelech was denying her schedule request in retaliation for her December 2018 discrimination complaint before the EEOC. *Id*. at 6.

For the 2020/2021 school year, the District again denied Plaintiff's request to be placed in higher level classes, and Plaintiff was assigned to four Level 2 classes and one Level 3 class. *Id*. at 7.

Plaintiff claims that the District's inequitable assignment of classes to Plaintiff created a hardship for Plaintiff in that the lower-level courses generally had a higher enrollment of students, more students with behavioral issues, and as a result, created more work for Plaintiff as compared to other teachers within her department. *Id*. at 6. Additionally, Plaintiff was allegedly

3

required to provide extra help to the lower-level students for which she did not receive any additional compensation. *Id*. at 6.

Plaintiff claims that despite teaching at the District for eighteen years, Plaintiff continues to be assigned to the courses that newly hired teachers with no tenure are assigned, and as a result, the inequitable assignment of classes has harmed Plaintiff's career advancement and professional growth and has deprived her of the opportunity to teach higher level course. *Id*. at 7.

The District alleges that it recommended two scheduling options that would meet Plaintiff's requests, but Plaintiff rejected both options. Def.'s Mem of Law at 3; Def.'s Mot., DHR Order at 2, Ex. C, Dkt. No. 11. Plaintiff then allegedly proposed a schedule that impacted five of the six Spanish teachers, but the District rejected her proposal and adhered to the original schedule due to the implications on staff and students. *Id*.

On August 29, 2019, Plaintiff filed a Complaint with EEOC and New York State Division of Human Rights ("DHR" or Division") alleging discrimination and retaliation-based claims against the District. Compl. at 2, 6; Def.'s Mot., Ex. B, Dkt. No. 11. The Division rendered its Determination and Order After Investigation on March 3, 2020 dismissing Plaintiff's claims for lack of probable cause. Def.'s Mot., DHR Order at 2, Ex. C, Dkt. No. 11. The Division held that Plaintiffs' request to reach Level 4 Spanish was not a "request for reasonable accommodation" but merely a "personal preference" that had no relation to her disability or ability to perform her job and noting that the District had already accommodated several requests put forth by Plaintiff. *Id*.

### B. Procedural Posture

On September 17, 2020, the EEOC issued a Notice of Right to Sue. Compl. at 2.

On December 11, 2020, Plaintiff commenced this action against the District alleging unlawful discrimination and retaliation under the ADA. Dkt. No. 1. On April 14, 2020, the Court waived its pre-motion conference requirement and granted Defendant's request to move for dismissal. *See* Minute Entry dated April 14, 2021. On August 6, 2021, Defendant filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim for unlawful discrimination and retaliation. Dkt. No. 11.

## II.    LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint successfully states a claim when there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

There are "[t]wo working principles" that guide this analysis: "First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted), *adopted by* 2017 WL 2303507 (E.D.N.Y. May 24, 2017). Although this Court is limited to facts as stated in the complaint, it may consider exhibits or documents

incorporated by reference. *See Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995). The courts may also take judicial notice of the administrative proceedings including those before the EEOC and DHR. *Falcon v. City Univ. of New York*, 263 F. Supp. 3d 416, 423-24 (E.D.N.Y. 2017) (considering EEOC records); *See Grays v. SDH Educ. W., LCC*, 16 Civ. 666 (DAB), 2017 WL 2240227, at 6 (S.D.N.Y. Mar. 23, 2017) (considering DHR complaint and records).

### III. DISCUSSION

#### A. Plaintiff's Discrimination Claim under the ADA

Plaintiff's first cause of action against the District is that pursuant to the ADA, the District willfully discriminated against Plaintiff based upon her disability. *See generally* Compl.; Pl.'s Opp. The District argues for dismissal of the ADA discrimination claim on the grounds that the Complaint fails to state a cause of action. *See generally* Defs.' Mot. Dis.; Defs.' Rep.

The ADA makes it unlawful for employers to discriminate against employees on account of a disability. *Hernandez v. International Shoppes*, LLC, 100 F.Supp.3d 232, 250 [E.D.N.Y 2015]. To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) plaintiff was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) plaintiff suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Smith v. North Shore–Long Island Jewish Health System*, 286 F. Supp. 3d 501 (E.D.N.Y. 2018) (quoting *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015)). The complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss. *Lebowitz v. New York City Department of Education*, 407

F.Supp.3d 158, 170-71 [E.D.N.Y. 2017]. Plaintiff is required, however, to plead facts that give plausible support to his or her claim. *Id*.

As an initial matter, the District does not dispute that they are covered by the ADA, or that Plaintiff was qualified to perform the essential functions of her job. At issue is whether Plaintiff sufficiently alleged: (I) that she has a qualifying disability under the ADA; (2) that she suffered an actionable adverse employment action; and (3) that the adverse action was due to her disability.

**1. Disability**

In support of dismissal, the District argues that Plaintiff has not shown that her diabetic condition amounts to a disability under the ADA. Def.'s Mem of Law. at 9. Plaintiff argues that her diabetic condition is a disability under the ADA because it limits her major life activity such as working. Pl.'s Opp. at 7.

To demonstrate disability within the meaning of the ADA, the plaintiff must prove one of the following: (1) that he/she has a physical impairment and that such impairment substantially limits one or more of his/her major life activities; (2) that there is "a record of such an impairment"; or (3) that he is "being regarded as having such an impairment." 42 U.S.C.A. § 12102(1); *Dipol v. New York City Transit Authority*, 999 F. Supp. 309 (E.D.N.Y. 1998). Here, Plaintiff alleges that her diabetic condition substantially limits one or more of her major life activities, including working. The ADA defines "major life activities" to include not only such tasks as seeing, walking, and working, but also "major bodily functions." 42 U.S.C. § 12102(2). "Major bodily functions," in turn, are defined to include "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Diabetes, by definition, is a disease which impacts the

7

functioning of the endocrine system." *Powell v. Merrick Academy Charter School*, 16-CV-5315 (NGG) (RLM), 2018 WL 1135551 at 5 (E.D.N.Y. Feb. 28, 2018).

Moreover, since the enactment of the ADA Amendment At of 2008 ("ADAAA"), numerous courts have reached the conclusion that a plaintiff's allegations that she has been diagnosed with, and treated for, diabetes, are sufficient at the pleading stage to raise a plausible inference that he/she has a "disability" under the ADA. *Id*. at 5-6*; See also Hensel v. City of Utica*, No. 6:15-CV-374 (LEK), 2017 WL 2589355, at 3-4 (N.D.N.Y. June 14, 2017) (holding that diabetes is now "nearly always a 'disability' under the ADA).   Here, in the Complaint and other pleadings, Plaintiff alleges that she is diabetic, which substantially limits one or more of her major life activities, including working.

Thus, this Court determines that Plaintiff has sufficiently pleaded a disability within the meaning of the ADA.

### 2. Adverse employment Action

In support of dismissal, the District argues that an unfavorable work schedule does not constitute an adverse employment action.  Plaintiff argues that the following constituted adverse employment actions: (1) the District's denial of her Spanish Course assignment requests; and (2) hinderance to Plaintiff's career advancement due to the District's denial of the opportunity for Plaintiff to teach higher level courses.

Under the ADA, a plaintiff suffers an adverse employment action when he or she experiences a materially adverse change in the terms and conditions of employment.  *Smith v. North Shore–Long Island Jewish Health System,* 286 F. Supp. 3d 501 (E.D.N.Y. 2018) (quoting *526 Dechberry v. N.Y.C. Fire Dep't*, 124 F.Supp.3d 131, 147 (E.D.N.Y. 2015)).  Employment actions "deemed sufficiently disadvantageous to constitute an adverse employment action

8

include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Id.*

It is well settled that scheduling and assignment issues involving course loads are generally not considered materially adverse employment actions. *Aspilaire v. Wyeth Pharmaceuticals, Inc.*, 612 F.Supp.2d 289, 304 (S.D.N.Y.2009). To constitute an adverse employment action, it is not enough that defendants gave plaintiff a subjectively less preferred teaching assignment; the assignment must be "materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement." *Kunik v. New York City Department of Education*, 436 F.Supp.3d 684 (S.D.N.Y. 2020). A failure to assign preferred teaching assignments has generally been found not to be an adverse employment action if there is no evidence that it affected the terms and conditions of employment, such as salary level. *Ferraro v. New York City Department of Education*, 404 F.Supp.3d 691, 711 (E.D.N.Y. 2017); *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y. 2014) (scheduling and assignment issues involving course loads are generally not materially adverse employment actions unless they are so burdensome as to constitute a departure from normal academic practice); *Castro v. City of New York*, 24 F. Supp. 3d 250, 264 (E.D.N.Y. 2014) ("[S]imply being assigned undesirable work duties ... and arguing that other employees were not assigned the unfavorable schedule is insufficient to establish adverse employment action, since [it does] not have a material impact on the terms and conditions of plaintiff's employment.").

Here, upon reviewing the pleadings, and construing the Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff has not adequately pled her discrimination claims against the District under the ADA. *Lebowitz,* 407 F. Supp. 3d at 170-71; *Leon v. New*

9

*York City Dept. of Educ.*, 612 Fed. Appx. 632, 634 (2d. Cir. 2015). More specifically, Plaintiff has not sufficiently pled that the District took adverse employment actions based on her disability inasmuch as her employment was not terminated, there was no reduction in her salary, and Plaintiff has not even attempted to explain how the denial of her preferred assignment schedule was materially adverse or outside the scope of her duties. *Sosa v. New York City Department of Education*, 368 F. Supp. 3d 489, 520 (E.D.N.Y. 2019). In instances where, as here, a teacher is denied a request for his/her preferred teaching assignment, such denial alone does not constitute an adverse employment action. *See e.g.*, *Ferraro*, 404 F.Supp.3d 691; *Dimitracopoulos*, 26 F. Supp. 3d 200; *Castro*, 24 F. Supp. 3d 250; *Zoulas v. New York City Department of Education*, 400 F. Supp. 3d 25, 55 (S.D.N.Y. 2019).

Further, Plaintiff conclusively states that her opportunities at career advancement were diminished but includes no factual basis for her allegations, or how her assignment actually impacted her reputation or potential for career advancement. *Id*. There is no evidence that her assignments were "materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement" such that they constituted an adverse employment action. *See Sotomayor v. City of New York*, 862 F. Supp .2d 226, 255 (E.D.N.Y. 2012).

Thus, this Court determines that denial of Plaintiff's request for a preferred teaching assignment did not constitute an adverse employment action by the District.

### 3. Inference of Disability

In support of dismissal, the District argues that Plaintiff fails to show how her disability played any role in the denial of her assignment requests. Plaintiff argues that the District's denial of her preferred teaching assignment was based on her disability under the ADA,

especially since (1) the District's approved similar requests for Plaintiff's co-workers; and (2) Plaintiff was required to do more work than her co-workers due to Defendants' refusal to re-assign her to higher-level Spanish courses.

Inference of discrimination is a flexible standard that can be met differently in different scenarios. *See Smith*, 286 F. Supp. 3d at 526 (*quoting Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). "No one particular type of proof is required to show that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination." *Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at 6 (E.D.N.Y. July 30, 2013) (citations omitted). To prove an alleged adverse employment action occurred under circumstances giving rise to an inference of discrimination, i.e., because of her disability, a plaintiff need only give plausible support to a minimal inference of discriminatory motivation. *Stinnett v. Delta Air Lines, Inc.*, 278 F.Supp.3d 599, 611 (E.D.N.Y. 2017). Nonetheless, "a discrimination complaint ... must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Dooley v. JetBlue Airways Corp.*, 636 Fed.Appx. 16, 20 (2d Cir. 2015) (Summary Order) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)) (alteration in original).

Plaintiff may provide direct evidence of intent to discriminate or indirect circumstances giving rise to an inference of discrimination. *Stinnett*, 278 F.Supp.3d at 611. A showing of disparate treatment, i.e., a showing that the employer treated plaintiff "less favorably than a similarly situated employee outside his protected group"—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case. *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d. Cir. 2003). To establish disparate treatment, an employee must show that he or she was similarly situated in all material respects to the individuals with whom

he or she seeks such comparison. *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014). Courts within the Second Circuit have regularly granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiff's or how they were treated differently by defendants. *See e.g., Johnson v. Andy Frain Services, Inc.*, 638 Fed. Appx. 68, 70 (2d. Cir. 2016); *Haggood v. Rubin & Rothman*, LLC, No. 14–cv–34L (SJF) (AKT), 2014 WL 6473527 at 11-12 (E.D.N.Y. Nov. 17, 2014).

Here, Plaintiff fails to offer allegations regarding the teachers with whom she wishes to compare herself. The Complaint simply offers conclusory statements that Plaintiff had to do more work than her counterparts because the District failed to re-schedule her course levels, without identifying who the alleged comparators are, how they are similarly situated, or alleging any plausible basis for connecting this alleged additional work to Plaintiff's disability.

Thus, even if any of the claimed injuries could be construed as adverse employment actions under the ADA, Plaintiff has failed to plausibly allege that the adverse actions were taken as a result of her disability. Bare, conclusory statements of discriminatory animus, which is all the amended complaint here contains, are simply insufficient to state a valid claim under the ADA. *See, e.g. Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) ("bare allegation [that defendant was motivated by plaintiff's protected membership], without any facts alleged in support, is insufficient to state a claim for intentional discrimination"); *Ochei v. The Mary Manning Walsh Nursing Home Co.*, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011) ((the false syllogism, "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected

12

class)" is insufficient to support any inference of discrimination.) (quoting *Grillo v. N.Y. City Transit Auth.*, 291 F.3d 231 (2d Cir. 2002)).

Accordingly, Plaintiff's conclusory assertion that she was denied her teaching preference because she has diabetes, without any supporting factual content, fails to state a plausible claim. Plaintiff's contention that she was required to do more work than her co-workers likewise fail to give rise to a plausible inference of discrimination since the complaint lacks any details regarding alleged comparators.

Therefore, this Court respectfully recommends that Plaintiff's discrimination claim be dismissed for Plaintiff's failure to sufficiently allege disability-based discrimination.

### B. Plaintiff's Retaliation Claim under the ADA

In the Complaint, Plaintiff alleges that the District retaliated against her after she filed charges with the EEOC and the DHR. The District argues that Plaintiff has failed to allege an adverse action in the context of retaliation and failed to plausibly allege but-for causation.

To establish retaliation under the ADA, a plaintiff must demonstrate that: "(1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [the plaintiff]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Flieger v. Eastern Suffolk BOCES*, 693 Fed. Appx. 14, 18 (2d. Cir. 2018). Activities protected by the ADA include complaints of ADA discrimination, including complaints on a good faith belief that the employer's actions violated the ADA, and requests for reasonable accommodations. *See, e.g., Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002) (requests for accommodations are protected activity); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224,

13

234 (2d Cir. 2000) (complaints based on a good faith belief that employer is violating the ADA are protected activity).

There is no dispute that Plaintiff engaged in protected activity by filing various complaints against the District, including complaints with the EEOC and the DHR. There is also no dispute that the District was aware of these activities. At issue is (1) whether Plaintiff has shown adverse employment actions in the retaliation context; and (2) whether a causal connection exists between the alleged adverse actions and the protected activity.

Plaintiff identifies as adverse employment actions for her retaliation claim the same conduct that she identified under her discrimination claim. Specifically, that she was denied her request to teach level 3 and level 4 Spanish courses. As with Plaintiff's discrimination claim, Plaintiff's reliance on the denial of her course preference requires dismissal of her retaliation claim. *See* e.g., *Ferraro*, 404 F. Supp. 3d at 716-17. In the context of retaliation claims, a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Courts in this Circuit have routinely held that the mere failure to give an employee her preferred teaching assignment is not an actionable retaliatory adverse action. *Mills v. S. Conn. State Univ.*, 519 F. Appx. 73, 76 (2d Cir. 2013) (finding that various incidents including intimidating behavior, shunning by colleagues, refusals to allow plaintiff to teach upper-level courses, and refusals to accommodate scheduling requests did not constitute adverse actions as they did not reflect "a materially adverse change in the terms and conditions of employment"); *Connolly v. City of New York*, 16-CV-465 (WFK), 2020 WL 5553843, at 12 (E.D.N.Y. Aug. 18, 2020) (finding denial of transfer request "is akin to an unfavorable office assignment or teaching schedule, which are not materially adverse actions in the retaliation

14

context"); *Leon v. Dep't of Educ.*, 16 F. Supp. 3d 184, 202-03 (E.D.N.Y. 2014) (holding that denial of plaintiff's top-choice teaching assignment, negative performance evaluations, exclusion from certain extracurricular school activities questioning as to when she would retire did not constitute adverse employment actions) (citing cases). Without a materially adverse employment action, Plaintiff's retaliation claims fail as a matter of law. See e.g., *Ferraro*, 404 F. Supp. 3d at 716-17.

In addition, Plaintiff has failed to sufficiently plead a causal connection between the alleged adverse employment actions and her protected activity. A causal connection can be shown either indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct. *See Connolly*, 2020 WL 5553843, at 13. To the extent that Plaintiff relies on the allegation that she received less favorable treatment than her similarly situated co-workers, those claims are conclusory and amount to little "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "[N]aked assertions devoid of further factual enhancement," will not survive a motion to dismiss. *Id*. (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955); *see also Leon,* 16 F. Supp.3d at 203 (holding that plaintiff's continued allegations that "younger similarly situated teachers" were treated differently than she was are conclusory and insufficient to avoid dismissal).

Plaintiff's reliance on temporal proximity alone is also insufficient to demonstrate but-for causation. Plaintiff appears to base her temporal proximity claim on the EEOC complaint she filed against the District and Director Pelch on December 17, 2018, which occurred approximately five months before she was denied her preferred teaching assignment in May

15

2019.  Pl.'s Opp. at 13-14.[1]  While the Second Circuit has not defined a "bright line" setting the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, *Frazier v. City of N.Y. Dep't of Correction*, No. 14-cv-1224, 2016 WL 4444775, at *4 (E.D.N.Y. Aug. 23, 2016) (citing *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001)), the Supreme Court has suggested that the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (citing with approval cases dismissing retaliation claims where there was a three- to four-month gap between protected activity and adverse employment action).

Accordingly, district courts in this Circuit have "consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Frazier,* 2016 WL 4444775, at *4 (collecting cases); *see also Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action."); *Marinacci v. U.S. Postal Serv.*, 403 F. Supp. 3d 116, 131 (E.D.N.Y. 2017) (finding nearly five-month gap between protected activity and plaintiff's termination "simply too attenuated to support an inference of causation"); *Yarde v. Good Samaritan Hosp*., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three

---

[1] Plaintiff also filed an EEOC complaint in 2014 and a subsequent EEOC complaint in August 2019, neither of which could serve as the basis for a temporal proximity claim since the 2014 complaint was more than five years prior to any of the alleged adverse actions and the August 2019 complaint was not made until after the alleged adverse action had already occurred in May 2019.  *See*, *e.g*., *Pickett v. Baldwin Union Free Sch. Dist*., 2016 WL 1714928, at *3 (E.D.N.Y. Mar. 21, 2016) ("there can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity").

16

months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation.").

In the absence of a bright line test, there are, of course, exceptions to the general rule and Plaintiff cites to several cases in which temporal gaps of more than the five months at issue here have been found sufficient to warrant an inference of retaliatory intent. Pl.'s Opp. at 13-14. Indeed, this lack of a bright line has allowed courts in the circuit to "exercise [their] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (internal quotation marks and citation omitted) (comparing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir.1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the plaintiff's protected activity) with *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (finding that the lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection)).

Upon closer review, however, the cases most heavily relied upon by Plaintiff all involved situations in which other allegations in the complaint reinforced an inference of retaliatory intent despite the otherwise attenuated timing between the adverse actions and protected activity. In *Summa v. Hofstra Univ.*, 708 F3d 115, 128 (2d Cir 2013), for example, the Court does suggest that a "seventh-month gap" between the filing of plaintiff's lawsuit and the decision to terminate her employment was not "prohibitively remote" for purposes of establishing but-for causation. *Id*. But a large part of the Court's decision rested on the fact that other adverse actions (denial of a seasonal football manager position) occurred within a much closer temporal proximity to plaintiff's protected activity (four months from plaintiff making complaints about discrimination). Moreover, the four-month gap was somewhat illusory, because plaintiff's

17

complaints were based on events that occurred on the very last day of the fall football season and the retaliatory conduct occurred at the start of the spring season, which was the first moment in time when the football coaching staff could have retaliated against plaintiff, who was not working for them over the intervening months. *Id.* The seven-month gap between plaintiff's filing of the discrimination lawsuit and her subsequent termination was found to raise a sufficient inference of causation because of the surrounding circumstances, including the earlier retaliatory conduct and certain comments made by the decision maker that directly linked the termination decision to plaintiff's filing of the lawsuit. *Id.* In contrast, the complaint here makes no allegation of any direct evidence of retaliatory intent and the five-month time gap, in the absence of any explanation of the surrounding circumstances, is far more attenuated than the allegations in *Summa*.

Similarly, in *Espinal v. Goord*, the Court found that "the passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom ... was a defendant in the prior lawsuit, [wa]s sufficient to support an inference of a causal connection" because there was a plausible explanation for the time gap. 558 F.3d at 129. Specifically, the Court reasoned that "[i]t is plausible that the officers waited to exact their retaliation at an opportune time—as when Espinal was involved in a fight with another inmate— in order to have a ready explanation for any injuries suffered by Espinal." *Id. See also Zappa v. Town of Hempstead*, 2018 WL 1702002, at *3–4 (E.D.N.Y. Jan. 16, 2018) (finding that five-month temporal proximity was sufficient to state a claim, in part, because similar adverse acts were committed within the same month as the protected activity and "reading the complaint as a

whole" plaintiff had plausibly alleged that he was subject to multiple adverse actions in retaliation for his support of a rival political candidate over the course of many months).

Other cases Plaintiff cites to simply do not support her position. *See, e.g., Rivera v. Orange County,* No. 10 CV 9134, 2013 WL 812016, at *11 (S.D.N.Y. Mar. 5, 2013) (finding an almost eight-month time gap insufficient to establish retaliatory causation); *Richardson v. New York State Department of Correctional Service*, 180 F.3d 426, 446-47 (2d Cir. 1999) (holding that unchecked retaliatory harassment inflicted on plaintiff by her coworkers could make out a sufficient prima facie case because several of the acts occurred within a month of deposition notices being sent out in plaintiff's lawsuit, but concluding that plaintiff could not establish a similar causal connection between her purported constructive discharge and her filing of a federal lawsuit because the two-year gap was too wide to support the inference that she was terminated in retaliation for filing the discrimination lawsuit).

In the absence of some explanation for the five-month gap in time between Plaintiff's EEOC complaint and the alleged retaliatory acts committed against her by the District, or any other allegations in the Complaint that would support an inference that retaliatory animus was a but-for cause for the alleged adverse acts, the allegations in the complaint are insufficient to state a cause of action for retaliation and the Court recommends that Defendants' Motion to Dismiss be granted as to the retaliation claim.

### C. CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' Motion to Dismiss be granted.

### D. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　　Steven L. Tiscione
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　　　　　Eastern District of New York

Dated: Central Islip, New York
　　　　March 4, 2022